# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | In Chapter 11 |
| | ) | Case No. 10-18417 |
| COOPER STAIR COMPANY, INC., | ) | Honorable |
| | ) | |
| Debtor-In-Possession | ) | Hearing Date: May 19, 2010 |
| | ) | Hearing Time: 10:00 a.m. |

## AGREED STIPULATION AND FINAL ORDER PERMITTING
## DEBTOR'S USE OF HARRIS BANK'S CASH COLLATERAL

THIS CAUSE COMING ON TO BE HEARD at the final hearing on the motion of Debtor, COOPER STAIR COMPANY, INC. ( the "Debtor"), for entry of an order permitting use of Harris Bank, N.A.'s (f/k/a Harris Bank Winnetka N.A.) ("Harris Bank's") cash collateral; due and proper notice of said hearing having been given to all parties entitled thereto, and all such parties having had such opportunity for hearing as is appropriate under the circumstances of this case; no objections having been filed to entry of this order and the Court being duly advised in the premises, Debtor and Harris stipulate and agree, and, as to paragraphs 1, and 3 through 8, and the Court finds as follows:

1. On April 26, 2010 (the "Petition Date"), Debtor filed a voluntary petition under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code").

2. Debtor designs, fabricates and installs stair systems.

3. The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to sections §§1107(a) and 1109 of the Bankruptcy Code.

-1-

4. No creditors' committee has been appointed in this case. No trustee has been appointed.

5. On April 28, 2010, the Court entered its Order Permitting Debtor Interim Use of Cash Collateral belonging to Harris Bank Winnetka, N.A. (the "Interim Cash Collateral Order") (Docket No. 13), and scheduled a final hearing for May 19, 2010 at 10:00 a.m.

6. On April 29, 2010, Debtor's counsel filed its Proof of Service (Docket No. 15) stating that she had served a copy of the Interim Cash Collateral Order on the entities identified in that Proof of Service. Accordingly, parties in interest in this case have received adequate notice of the hearing on entry of this order (the "Final Cash Collateral Order").

7. No entity filed an objection to entry of a final cash collateral order by the May 14, 2010 deadline prescribed in paragraph R of the Interim Order.

8. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §157 and §1334. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(M).

## SECURITY INTEREST OF HARRIS BANK

9. On or about July 2, 2003, Debtor executed a promissory note in the amount of $400,000.00 (the "2003 Note") in favor of Harris Bank. Concurrently, Debtor executed a security agreement in favor of Harris Bank in which Debtor granted Harris Bank a security interest in all of its assets, including, without limitation, accounts receivable, to secure performance of the Debtor's obligations to Harris Bank under the 2003 Note. On or about May 2, 2008, Debtor executed a change in terms agreement regarding the 2003 Note to include the pledge of non-debtor real property as

–2–

further security for performance of the Debtor's obligations under the 2003 Note. As of the Petition Date, the Debtor owed Harris $349,993.75 under the 2003 Note, consisting of $348,000 of principal, and $1993.73 of accrued but unpaid interest.

10. On or about May 5, 2006, Debtor executed a promissory note in the amount of $520,000.00 (the "2006 Note") in favor of Harris Bank. Concurrently, Debtor executed a security agreement in favor of Harris Bank in which Debtor granted Harris Bank a security interest in all of its assets, including, without limitation, accounts receivable, to secure performance of the Debtor's obligations to Harris Bank under the 2006 Note. As of the Petition Date, the Debtor owed Harris $383,738.90 under the 2006 Note, consisting of principal of $380,405.63 and $3,333.27 of accrued but unpaid interest.

11. Harris Bank perfected its security interests in the assets covered by the security agreements described above in paragraphs 9 and 10 (the "Prepetition Collateral") by filing UCC-1 financing statements with the Secretary of State of Illinois. As a result, Harris Bank holds a valid and perfected first priority lien on, and security interest in, the Prepetition Collateral. The documents identified paragraphs 9, 10, and 11 hereof are hereinafter sometimes referred to collectively as the "Loan Documents." Harris Bank's prepetition claim arising from the Loan Documents is hereinafter referred to as the "Prepetition Claim."

12. In consideration of Harris Bank's consent to the Debtor's use of Cash Collateral on the terms and conditions set forth herein, the Debtor hereby forever releases, waives and discharges Harris Bank, together with its officers, directors, employees, agents, attorneys, professionals, affiliates, members, subsidiaries, assigns and/or successors (collectively, the "Released

-3-

Parties"), from (a) any and all claims and causes of action arising out of, based upon or related to, in whole or in part, (i) any of the Loan Documents, or (ii) Harris Bank's Prepetition Claim, including, without limitation, any claims or defenses as to the extent, validity, priority, enforceability, or perfection of the Loan Documents or Harris Bank's Prepetition Claim, any "lender liability" claims or causes of action, any actions, claims or defenses arising under chapter 5 of the Bankruptcy Code, or any other claims or causes of action against Harris Bank involving subordination or re-characterization of Harris Bank's Prepetition Claim; and (b) any acts or omissions by any or all of the Released Parties in connection with (x) the Loan Documents, (y) Harris Bank's Prepetition Claim or (C) any prepetition relationship between any one or more of the Released Parties and the Debtor or any affiliate thereof relating to either the Loan Documents or to Harris Bank's Prepetition Claim.

## DEBTOR REQUIRES USE OF CASH COLLATERAL

13. Debtor requires the use of Harris Bank's cash collateral, as that term is defined in Section 363(a) of the Bankruptcy Code ("Cash Collateral") and requests final authorization from this Court to utilize that Cash Collateral pursuant to section 363(c)(2)(B) of the Bankruptcy Code. A statement showing Debtor's projected revenues and expenses through the week ending July 23, 2010 (the "Budget"), is attached hereto as Exhibit 1.

14. The Cash Collateral is the Debtor's only income. If it is not authorized to use the Cash Collateral, the Debtor will be unable either to pay its employees, or to purchase goods for resale. Consequently, without the ability to use Cash Collateral, Debtor would be forced to liquidate.

NOW, THEREFORE, IT IS HEREBY ORDERED, AND THE DEBTOR AND HARRIS BANK STIPULATE AND AGREE that:

A. Debtor is hereby authorized to use Harris Bank's Cash Collateral on a final basis pursuant to Section 363(c)(2) of the Bankruptcy Code provided, however, that (1) Cash Collateral shall not be used for either (a) objecting to or contesting the Loan Documents or Harris Bank's Prepetition Claim or prosecuting any actions, claims or causes of action against Harris Bank, or (b) paying expenses other than those post-petition obligations included in the Budget, plus no more than ten percent (10%) of the expenditures proposed in each line of the Budget, unless otherwise agreed by Harris Bank; and (2) no payroll payments shall be made without simultaneously making tax deposits in an amount equal to the applicable withholding and social security taxes for each employee of the Debtor. Except as otherwise provided in this Order, or unless otherwise ordered by the Court after timely written notice to Harris Bank, Debtor shall use the Cash Collateral solely for payment of its post-petition obligations and indebtedness incurred in the ordinary course of its business operations.

B. Debtor shall deposit all monies constituting Harris Bank's Cash Collateral, whether generated pre-petition, or post-petition, in Debtor's Debtor in Possession bank account, which bank account shall be maintained at all times at Harris Bank.

C. As adequate protection for its interest in the Cash Collateral, if and to the extent its prepetition liens are valid and perfected, to the extent of the Cash Collateral utilized, Harris Bank is hereby granted replacement liens (the "Replacement Liens") upon those assets of the Debtor acquired subsequent to the filing of the Chapter 11 petition (the "Postpetition Collateral") of the same type and character as the Prepetition Collateral. The Replacement Liens shall have the same

priority in the Postpetition Collateral as Harris Bank's prepetition liens have in the Prepetition Collateral. The Replacement Liens shall be deemed valid, binding, enforceable, and properly perfected upon entry of this Final Cash Collateral Order without the execution or filing of any document otherwise required to be executed and/or filed, or the taking of any action otherwise required, under applicable non-bankruptcy law. Notwithstanding the foregoing, the Debtor shall, at Harris Bank's option, execute and deliver to Harris Bank, in form and substance satisfactory to Harris Bank, such financing statements, mortgages, assignments, agreements, instruments, and other documents, and shall take such further actions, as Harris Bank shall request to create, evidence, or perfect the replacement liens. Notwithstanding the provisions of section 362(a) of the Code, Harris Bank may file any such financing statements, mortgages, assignments, agreements, instruments, and documents in such filing office or offices, and take such other action as would be required, absent the provisions of this Final Cash Collateral Order, under applicable non-bankruptcy law in order to perfect the Replacement Liens. As additional adequate protection for Harris Bank's interest in the Cash Collateral, Debtor shall pay Harris Bank $3,943.00 on May 15, 2010 and the same amount every 30 days thereafter pending further order of this Court.

D. The provisions of this Final Cash Collateral Order shall be immediately effective upon entry. Pending further order of this Court, the terms and provisions of this Final Cash Collateral Order shall remain in full force and effect (1) during Debtor's chapter 11 case, (2) in any superseding case under Chapter 7, and (3) following either (a) dismissal of this case, or (b) the Termination Date, as defined below. The liens and security interests granted to Harris Bank herein shall maintain their priority as provided by this Final Cash Collateral Order until said liens and security interests are

—6—

satisfied and discharged. If any or all of the provisions of this Final Cash Collateral Order are hereafter modified, vacated or stayed by subsequent order of this Court, or any other court, such stay, modification or vacation shall not affect: (x) the validity of any debt to Harris Bank incurred by the Debtor pursuant to this Final Cash Collateral Order and prior to the effective date of such stay, modification or vacation; (y) the validity and enforceability of any Replacement Lien, security interest or priority authorized hereby with respect to any such debt to Harris Bank; and (z) the conduct of Harris Bank with respect to the rights granted to it either in this Final Cash Collateral Order or in any loan documents executed prior to the effective date of such stay, modification or vacation. Notwithstanding such stay, modification or vacation, all liabilities owed to Harris Bank by Debtor pursuant to this Final Cash Collateral Order prior to the effective date of such modification, stay or vacation, shall be governed in all respects by the provisions of this Final Cash Collateral Order, and Harris Bank shall be entitled to all of the rights, privileges and benefits, including, without limitation, the Replacement Lien, security interest, and the priority granted herein, with respect to all such liabilities and the course of conduct established in connection therewith.

    E.    Debtor shall (1) insure the Prepetition Collateral and the Postpetition Collateral against risk of loss, damage and destruction for the full replacement value thereof with an insurance company acceptable to Harris Bank (2) name Harris Bank as the loss payee on such insurance policy, and (3) provide proof of said insurance to Harris Bank.

F. Harris Bank shall have the right to inspect the premises, property, and assets of the Debtor (including, without limitation, the Prepetition and Postpetition Collateral), and to conduct audits and inspections of the Debtor's books and records during regular business hours upon reasonable advance notice.

G. The provisions of this Final Cash Collateral Order shall be binding upon and inure to the benefit of Harris Bank, and Debtor, retroactive to the Petition Date.

H. Entry of this Final Cash Collateral Order is without prejudice to the rights of Harris Bank to receive any prepetition or postpetition payments due to Harris Bank, or to seek modification of the terms hereof at any time upon reasonable notice to all parties in interest, subject to the rights of any party to object thereto.

I. Each Wednesday following entry of this Order, the Debtor shall provide Harris Bank with a written report, in a format mutually agreeable to the Debtor and Harris Bank, comparing the Debtor's actual revenues and expenses for the week ending the preceding Sunday to the revenues and expenses identified in the Budget for the said week.

J. The occurrence of any one or more of the following shall constitute an event of default (an "Event of Default") under this Final Cash Collateral Order.

1. This Final Cash Collateral Order is stayed, reversed, vacated or modified on appeal, or shall cease to be in full force and effect;

2. The Debtor fails to perform any of its obligations under this Final Cash Collateral Order or fails to cure any default hereunder within three (3) calendar days after receipt of written notice of the default;

3. Conversion of the Debtor's Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code;

4. Appointment of a Chapter 11 Trustee;

5. Dismissal of the Debtor's Chapter 11 case;

6. Occurrence of the effective date of any plan of reorganization or plan of liquidation for the Debtor

7. Entry of an order pursuant to section 363 of the bankruptcy code approving a sale of all or substantially all of the Debtor's assets, *provided, however,* that to the extent (a) the net proceeds of such a sale are sufficient to satisfy in full both Harris Bank's Prepetition Claim and any Replacement Lien and (b) the foregoing order provides for payment to Harris Bank at the closing of such sale of sufficient sale proceeds to satisfy Harris Bank's Prepetition Claim and Replacement Lien, then the entry of such order shall not constitute an Event of Default; or

8. The filing of a motion seeking entry of any order pursuant to sections 364(c)(1) or (d)(1) of the Bankruptcy Code requesting authority for the Debtor to obtain credit that is payable on a senior priority or *pari passu* basis with either the prepetition lien of Harris Bank created by the Loan Documents or Harris Bank- Replacement Liens.

K. Upon the occurrence of an Event of Default, Debtor's authority to use Cash Collateral shall cease immediately. ~~and, absent further order of this Court, the automatic stay pursuant to §362(d) of the Bankruptcy Code shall be deemed terminated as to Harris Bank at 5:00 p.m. Chicago time on the third business day after occurrence of such Event of Default.~~

-9-

L.    Anything herein to the contrary notwithstanding, Debtor's authority to use Cash Collateral pursuant to this Agreed Order shall terminate on the first to occur of an Event of Default, or August 17, 2010 (the "Termination Date").

M.    Nothing in this Order shall in any way restrict the scope or priority of Harris Bank's pre-petition liens, security interests or claims.

N.    Any party in interest (including a creditors' committee as representative of the Debtor's estate), other than the Debtor, may (1) file a complaint pursuant to Bankruptcy Rule 7001 challenging the validity, extent, perfection or priority of the liens and security interests granted by the Debtor to Harris Bank pursuant to the Loan Documents, (2) object to the allowance of any portion of Harris Bank's Prepetition Claim or Claims arising out of the Loan Documents, (3) take such other action to invalidate, avoid, subordinate or otherwise challenge the Loan Documents, or any lien, claim or other obligation incurred in connection with any of the foregoing, or (4) pursue claims or causes of action against Harris Bank (each of (1)-(4) above, a "Challenge"); provided, however, that such Challenge(s) must be filed in this Court and served upon the undersigned counsel for Harris Bank by (a) a creditors' committee no later than 5:00 p.m. Chicago time on the 60th day following formation of the committee, or (b) by any other party in interest entitled to make a Challenge by no later than 5:00 p.m. Chicago time on July 27, 2010 (in each case, the "Challenge Period"). In the absence of a timely Challenge, all parties in interest shall be forever barred from making a Challenge.

Pursuant to this Order, the Challenge Period may only be extended either (i) by the Court pursuant to an order after notice and a hearing and for good cause shown, or (ii) as may be agreed to in writing by Harris Bank.

Date: __19 MAY 2010__

ENTER: _____
Bankruptcy Judge

| STIPULATED AND AGREED TO: | |
|---|---|
| COOPER STAIR COMPANY, INC.<br><br>By: _____<br>One of its Attorneys<br><br>QUERREY & HARROW, LTD.<br>Attorneys for Debtor<br>175 West Jackson Boulevard, Suite 1600<br>Chicago, Illinois 60604<br>312-540-7000 | HARRIS BANK, N.A.<br><br>By: _____<br>One of its Attorneys<br><br>Dykema Gossett PLLC<br>10 S. Wacker Drive – Suite 2300<br>Chicago, IL 60606<br>312-876-1700 |

**Cooper Stair Company, Inc.**
**13 Week Budget Beginning 4/26/2010**

| | 1 Week End 4/30/2010 | 2 Week End 5/7/2010 | 3 Week End 5/14/2010 | 4 Week End 5/21/2010 | 5 Week End 5/28/2010 | 6 Week End 6/4/2010 | 7 Week End 6/11/2010 | 8 Week End 6/18/2010 | 9 Week End 6/25/2010 | 10 Week End 7/2/2010 | 11 Week End 7/9/2010 | 12 Week End 7/16/2010 | 13 Week End 7/23/2010 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accounts Receivable | 0 | 0 | 0 | 605 | 4,675 | 8,141 | 0 | 0 | 0 | 4,500 | 0 | 1,910 | 0 |
| Work in Progress | 6,875 | 2,200 | 12,500 | 34,508 | 78,029 | 55,790 | 7,152 | 13,136 | 5,060 | 38,029 | 75,480 | 34,100 | 23,157 |
| Sales Forecast | 0 | 11,250 | 9,750 | 42,023 | 21,518 | 40,000 | 3,188 | 47,023 | 20,360 | 21,510 | 31,714 | 46,100 | 21,452 |
| **TOTAL RECEIPTS** | 6,875 | 13,450 | 37,250 | 77,136 | 104,222 | 103,931 | 10,340 | 60,159 | 25,420 | 64,039 | 107,194 | 82,110 | 44,609 |
| Post Petition Financing | 30,000 | 25,000 | | | | | | | | | | | |
| **Cash Disbursements** | | | | | | | | | | | | | |
| *Employee Compensation* | | | | | | | | | | | | | |
| Payroll (net) | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 | 17,250 |
| Taxes - payroll (Total) | 9,070 | 7,700 | 7,700 | 7,700 | 9,070 | 7,700 | 7,700 | 7,700 | 9,070 | 7,700 | 7,700 | 7,700 | 9,070 |
| Insurance - medical (Total) | 7,700 | 873 | | | | 7,700 | 873 | | | 7,700 | 873 | | |
| AXA Equitable - SARSEP (employee) | 1,046 | | 1,046 | | 1,046 | | 1,046 | | 1,046 | | 1,046 | 1,046 | |
| Workers' Compensation Insurance | | | | 3,213 | | | | | 3,213 | | | | 2,077 |
| *Cost of Sales* | | | | | | | | | | | | | |
| Purchases | 1,250 | 1,110 | 8,004 | 22,712 | 19,392 | 27,860 | 16,435 | 11,870 | 14,952 | 7,933 | 26,343 | 5,260 | 4,640 |
| Indirect material | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 | 115 |
| Supplies | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 | 100 |
| Tooling (perishable & non-perishable) | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 | 30 |
| Packaging | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| Freight | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 | 10 |
| *Sales* | | | | | | | | | | | | | |
| Advertising & displays | | | 26 | | | | 26 | | | | 26 | | |
| Shows & conventions | | | | | | | | | | | | | |
| Sales other | | | | | | | | | | | | | |
| *General & Administrative* | | | | | | | | | | | | | |
| Building rent | | 11,500 | | | | 11,500 | | | | 11,500 | | | |
| Real estate taxes | | | | | | 17,500 | | | | | | | |
| Utilities | | 161 | | 364 | 870 | 161 | | 80 | 870 | 161 | | 500 | 870 |
| Telecom | | | | | 85 | | | | 85 | | | | 85 |
| Postage, messenger, overnight | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 | 60 |
| Office expense (supplies etc.) | 100 | | | | 100 | | | | 100 | | | | |
| Dues & subscriptions | | | | | | | | | | | | | |
| Travel & entertainment | | | | | | | | | | | | | |
| Auto/vehicle | 265 | 265 | 265 | 265 | 265 | 265 | 265 | 265 | 265 | 265 | 265 | 265 | 265 |
| Insurance - general, property & liability | | | | | | | 7,830 | | | | 7,830 | 1,432 | |
| Training | | | | | | | | | | | | | |
| Taxes & licenses | | | | | | | | | | | | | 140 |
| Equipment rental | 93 | | | 409 | | 93 | | | 409 | 93 | | | 409 |
| Repairs & maintenance (Plant) | 25 | 25 | 165 | 25 | 25 | 151 | 25 | 165 | 25 | 25 | 25 | 165 | 25 |
| Repairs & maintenance (Equipment) | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 | 135 |
| *Debt Service* | | | | | | | | | | | | | |
| Capital lease payments | | | | | 2,108 | | | | 2,108 | | | | 2,108 |
| Auto loan payments | | | 670 | 765 | | | 670 | 765 | | | 670 | 765 | |
| Harris Bank - Adequate protection | | | 3,943 | | | | 3,943 | | | | | 3,943 | |
| **TOTAL DISBURSEMENTS** | 37,259 | 39,344 | 39,529 | 53,163 | 54,671 | 90,640 | 56,523 | 38,555 | 49,853 | 57,087 | 62,488 | 38,786 | 37,399 |
| **Cash Balance Roll Forward** | | | | | | | | | | | | | |
| Beginning Cash Balance | 1,500 | 1,116 | 222 | -2,057 | 21,916 | 71,467 | 84,758 | 38,575 | 60,179 | 35,746 | 42,698 | 87,404 | 130,728 |
| Plus Total Cash Receipts and Financing | 36,875 | 38,450 | 37,250 | 77,136 | 104,222 | 103,931 | 10,340 | 60,159 | 25,420 | 64,039 | 107,194 | 82,110 | 44,609 |
| Less Total Cash Disbursements | 37,259 | 39,344 | 39,529 | 53,163 | 54,671 | 90,640 | 56,523 | 38,555 | 49,853 | 57,087 | 62,488 | 38,786 | 37,399 |
| **ENDING CASH BALANCE** | 1,116 | 222 | -2,057 | 21,916 | 71,467 | 84,758 | 38,575 | 60,179 | 35,746 | 42,698 | 87,404 | 130,728 | 137,938 |